**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:    4:20CR158 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| EDWARD KILLINGSWORTH, JR., | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Currently pending before this Court are Defendant Edward Killingsworth, Jr.'s ("Killingsworth") Motion to Dismiss and Motion to Suppress requesting that this Court: (1) dismiss the indictment against him as this charge violates his right of freedom of speech under the First Amendment of the United States Constitution; (2) suppress any evidence obtained during the warrantless search incident to his arrest as law enforcement lacked probable cause to arrest him and, therefore, both the search and the seizure were conducted in violation of the Fourth Amendment of the United States Constitution; and (3) suppress all statements made by him during his arrest as he was not provided the *Miranda* warnings in violation of the Fifth Amendment of the United States Constitution. (Mot. to Dismiss, ECF No. 17; Mot. to Suppress, ECF No. 16.) The government timely opposed both motions. (Opp'n to Mot. to Dismiss, ECF No. 19; Opp'n to Mot. to Suppress, ECF No. 18.)

On July 13, 2020, the parties presented argument and sworn testimony related to the pending motions. (*See generally* July 13, 2020 Hr'g Tr., ECF No. 22.) As the issues presented have been fully briefed and the parties have been heard, this Court hereby DENIES Killingsworth's Motion

to Dismiss and likewise DENIES Killingsworth's Motion to Suppress for the reasons set forth in this Memorandum of Opinion and Order.

## I.  BACKGROUND

On September 17, 2019, at approximately 8 am, Detective John Greaver ("Detective Greaver") of the Warren Police Department received a text message containing a screenshot of a Facebook post, which depicted Facebook user "Edward Killingsworth" posting on Facebook "I think a cop needs killed around here again." (July 13, 2020 Hr'g Tr. 5:20-7:11, 15:18-22, ECF No. 22.) Detective Greaver investigated and discovered that Facebook user "Edward Killingsworth" posted general comments on the Warren's Real Breaking News Facebook page including "I think a cop needs killed around here again" and "More cops need shot dead. They kill us, we kill them," along with comments directed toward specific individuals such as: "Your kids need shot in front of you"; "F you and your kids, you won that prize"; "I'm going to F your wife first. Trust me I'll take one with me"; and "I'll see you in the woods." (*Id.* at 7:13-18, 9:9-17, 10:9-18, 17:1-7, 22:20-23-19.) Detective Greaver then compared Facebook user "Edward Killingsworth"'s profile photograph from his personal Facebook page with the driver's license photograph for Defendant Edward Killingsworth, Jr. contained in Ohio's law enforcement database and found that the same individual, Killingsworth, was depicted in both photographs. (*Id.* at 7:19-9:8, 16:8-25.)

From this investigation, in conjunction with his training and experience that individuals often use their own Facebook profiles to post content on Facebook, Detective Greaver concluded that Killingsworth, who lived in Warren, Ohio according to the Ohio law enforcement database, posted the comments on Facebook, and accordingly, a warrant was issued for his arrest the afternoon of September 17, 2019. (*Id.* at 10:19-11:8, 15:23-16:7.) The warrant issued was for Aggravated Menacing and Telecommunication Harassment in violation of Warren Ohio's Codified

Ordinances. *See State of Ohio v. Killingworth*, Warren M.C. No. 2019 CRB 002229 (Sept. 17, 2019) (dismissed Nov. 6, 2019); Warren Codified Ordinance 537.05; Warren Codified Ordinance 537.10.

Immediately thereafter, Killingsworth's parole officer arranged for Killingsworth to come to the Warren Police Station. (July 13, 2020 Hr'g Tr. 11:10-19, 17:8-15, ECF No. 22.) When Killingsworth arrived at the Warren Police Station, he was advised of the warrant issued for his arrest and Detective Greaver, along with Officer Michael Sajnovsky ("Officer Sajnovsky") of the Warren Police Department, placed Killingsworth under arrest. (*Id.* at 11:20-12:7, 18:22-24, 26:12-27:21, 27:25-28:16, 35:15-20, 36:7-49.) At the time of his arrest, the arresting officers did not recite the *Miranda* warnings to Killingsworth, but they also did not ask Killingsworth any questions. (*Id.* at 12:20-13:17, 18:25-19:16, 28:19-29:1, 31:20-25, 36:21-23, 38:23-24.) The arresting officers did, however, hear Killingsworth make unprompted, voluntary statements and ask questions of the officers during his arrest – questions to which the officers briefly responded. (*Id.* at 12:20-13:17, 19:7-16, 30:3-31:25, 38:11-39:5.)

Killingsworth was searched incident to arrest, and a cell phone was recovered from his person. (*Id.* at 14:2-5, 20:2-11, 40:25-41:12.) He was then placed into a police cruiser. (*Id.* at 14:10-15.) Killingsworth was searched a second time after Officer Sajnovsky witnessed Killingsworth reaching for his waistband while in the back of the police cruiser. (*Id.* at 30:24-31:12.) Killingsworth was then transported to Trumbull County Jail. (*Id.* at 19:17-19, 27:22-23, 32:13-15, 37:6-8.)

Ultimately, Killingsworth's case was referred to the Federal Bureau of Investigation ("FBI"). (*Id.* at 23:11-16, 24:7-13.) Thereafter, on March 4, 2020, Killingsworth was indicted by a Federal Grand Jury for one count of Interstate Communication Threat in violation of 18 U.S.C. § 875(c).

(Indictment, ECF No. 1.) Specifically, Killingsworth was charged with knowingly and willfully transmitting interstate communications from Warren, Ohio via Facebook in September 2019, which threatened to kill any law enforcement officer when he posted "I think a cop needs killed around here again" and "[M]ore cops need shot dead. They kill us, we kill them simple." (*Id.*)

Thereafter, Killingsworth filed the currently pending Motion to Dismiss requesting this Court dismiss the indictment against him as any comments he may have posted on Facebook were protected by the First Amendment guarantee to freedom of speech. (Mot. to Dismiss 2-9, ECF No. 17.) Killingsworth also filed the currently pending Motion to Suppress requesting this Court suppress any evidence obtained during the warrantless search incident to his arrest because law enforcement lacked probable cause to effect the arrest in the first place, and, therefore, both the search and the seizure were executed in violation of the Fourth Amendment. (Mot. to Suppress 3-5, ECF No. 16.) Finally, Killingsworth is requesting this Court suppress any statements he made during his arrest because the arresting officers did not recite the *Miranda* warnings to him in violation of the Fifth Amendment. (*Id.* at 6.)

This Court has considered the sworn testimony and submitted written materials discussing the issues presented and, for the reasons enumerated herein, denies Killingsworth's Motion to Dismiss and, likewise, denies Killingsworth's Motion to Suppress.

II.  **ANALYSIS**

A.  **Legal Sufficiency of the Indictment**

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  More specifically, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,

and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citing *Hagner v. United States*, 285 U.S. 427 (1932); *United States v. Debrow*, 346 U.S. 374 (1973)). In essence, an indictment must be specific enough to put the defendant on notice of the charges he faces while also enabling him to plead double jeopardy in future proceedings "if charged with the same crime based on the same facts." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005)).

To meet these requirements, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself" so long as the statute "fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the [offense] intended to be punished." *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)) (internal quotation marks omitted). Accordingly, 18 U.S.C. § 875(c) punishes those who transmit "in interstate or foreign commerce any communication containing . . . any threat to injure the person of another . . .." 18 U.S.C. § 875(c).

As an initial matter, this Court finds that the indictment at issue satisfies the necessary threshold legal requirements as outlined above. Specifically, the indictment alleges that in September 2019, from Warren, Ohio, Killingsworth knowingly and willfully transmitted through interstate commerce, via Facebook, a communication, the posted Facebook comments, that threatened to injure, more specifically kill, any law enforcement officer. This information, taken directly from the indictment, constitutes a precise recitation of the elements of the crime for which Killingsworth is charged along with a concise and definite statement of the facts supporting the charge against him such that Killingsworth is on notice of the charge against which he must defend and could successfully plead double jeopardy if charged with the same offense based upon the same set of

facts in the future. Killingsworth's arguments for dismissing the indictment focus, however, on the mental state required for convictions under 18 U.S.C. § 875(c) and the First Amendment guarantee of freedom of speech – each of which will be addressed in turn.

      1. Requisite Mental State

In truth, conviction under 18 U.S.C. § 875(c) is only possible when the government proves that: "(1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the defendant intended the message as a threat." *United States v. Howard*, 947 F.3d 936, 943 (6th Cir. 2020) (quoting *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018)) (internal quotation marks omitted). *See also Elonis v. United States*, 135 S. Ct. 2001, 2011-12 (2015) (explaining that a defendant's mental state is critical in determining whether the communication contained a threat, because it is insufficient for liability to be determined by "whether a 'reasonable person' regards the communication as a threat – regardless of what the defendant thinks"). With respect to demonstrating the defendant's intent, "the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 135 S. Ct. at 2012.

As a practical matter, a reasonable reading of the entirety of the indictment, which specifies the words Killingsworth allegedly communicated, properly implies the requisite mental state, even if the words "knowingly" and "willfully" are not written immediately before the word "threatened". *See Howard*, 947 F.3d at 943-944 (explaining that "an indictment, when read in its entirety, can allege a defendant's intent element by way of descriptions of the defendant's actions – all of which can imply defendant's requisite mental state for every element of the crime" even if the states of mind are not written immediately before the word "threat"). To be clear, a reasonable

reader of the entirety of the indictment at issue "could conclude that [Killingsworth] 'willfully and knowingly' transmitted the [Facebook posts] for the purpose of issuing a threat, or with the knowledge that the [Facebook posts] [would] be viewed as a threat." *Id.* at 944 (quoting *Elonis*, 135 S. Ct. at 2013) (internal quotation marks omitted).

Therefore, this Court concludes that the indictment against Killingsworth is legally sufficient as written in that it alleges Killingsworth possessed the mental state required for a violation under 18 U.S.C. § 875(c). However, Killingsworth argues that the indictment against him must be dismissed because the statements he allegedly made on Facebook were merely statements of opinion, not threats, and therefore, he does not meet the *mens rea* required to violate 18 U.S.C. § 875(c). (Mot. to Dismiss Indictment 5, ECF No. 17.) However, this argument is one of fact, not law, squarely for a jury, not this Court, to determine. What is properly at issue before this Court is whether the indictment against Killingsworth is legally sufficient. Because the language of the indictment, with respect to the mental state required for the charge against Killingsworth, can be reasonably read to allege that Killingsworth either intended his words to constitute a threat or knew that his words would be viewed as a threat, this Court concludes that the indictment is *legally* sufficient. This Court will not, however, address or opine on the factual challenge that Killingsworth raises as to the indictment.

2.  First Amendment Guarantee of Freedom of Speech

Finally, in punishing those who transmit "in interstate or foreign commerce any communication containing . . . any threat to injure the person of another . . .", 18 U.S.C. § 875(c) necessarily punishes speech. Although the First Amendment to the United States Constitution ensures that "Congress shall make no law . . . abridging the freedom of speech . . .", it does not preclude the government from charging individuals with speech-based crimes. U.S. Const. amend.

I; *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) (citing *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970)). In striking a balance between the constitutional right to freedom of speech with the government's duty to "protect[] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur," the First Amendment requires, for violations of 18 U.S.C. § 875(c) specifically, that the threat be a "true threat." *Jeffries*, 692 F.3d at 478 (citing *Watts v. United States*, 394 U.S. 705, 707 (1969); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)).

True threats are "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). True threats, "by their very utterance inflict injury." *Jeffries*, 692 F.3d at 480 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)) (internal quotation marks omitted). To be a true threat within the context of 18 U.S.C. § 875(c), "the defendant must subjectively intend his communication to be threatening." *Doggart*, 906 F.3d at 512 (citing *Elonis*, 135 S. Ct. at 2011).

None of this discussion lends credence to the idea that the defendant must have subjectively intended to commit the underlying, threatened offense. *See Black*, 538 U.S. at 359-60 ("The speaker need not actually intend to carry out the threat"); *Doggart*, 906 F.3d at 511. In addition, the Supreme Court of the United States has held that political hyperbole does not fit into the definition of a "true threat" as there is a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts*, 394 U.S. at 708 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)) (internal quotation marks omitted).

The parties in this matter take the time to argue whether Killingsworth's speech is protected by the First Amendment as it is political hyperbole or whether the speech is a true threat which does not enjoy the protection of the First Amendment. However, whether or not Killingsworth subjectively intended his statements to be threatening or political hyperbole is a clearly a factual disagreement, one in which this Court may not opine, analyze, or further discuss – factual issues remain the duty of the jury. What this Court may address is whether the indictment against Killingsworth is legally sufficient. Because the indictment alleges that Killingsworth's speech is a threat in violation of 18 U.S.C. § 875(c) and that Killingsworth possessed the requisite subjective intent that the speech be threatening, the indictment is legally sufficient. Therefore, Killingsworth's motion to dismiss the indictment is denied.

### B. <u>Fourth Amendment – Probable Cause Arrest and Search Incident to Arrest</u>

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . and no Warrants shall issue, but upon probable cause . . .." U.S. Const. amend. IV. All told, "[t]he basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967)) (internal quotation marks omitted).

### 1. <u>Arrest Warrants Supported by Probable Cause</u>

In forbidding "unreasonable searches and seizures," the Fourth Amendment typically requires that law enforcement have probable cause or a warrant supported by probable cause before making an arrest. *Herring v. United States*, 555 U.S. 135, 136 (2009). An arrest warrant, therefore,

"primarily serves to protect an individual from an unreasonable seizure" as it is issued "upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense." *Steagald v. United States*, 451 U.S. 204, 213 (1981). In the instant matter it is undisputed that Killingsworth's arrest was executed pursuant to an arrest warrant. The decision to issue a warrant, which necessarily includes a determination of probable cause, "should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Killingsworth argues, however, that probable cause did not support the issuance of the warrant for his arrest, and, therefore, his arrest was executed in violation of the Fourth Amendment. (Mot. to Suppress 3-5, ECF No. 16.) Probable cause for an arrest depends upon whether, at the time of the arrest, "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citing *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949); *Henry v. United States*, 361 U.S. 98, 102 (1959)). Determining whether the "reasonably trustworthy information" that the defendant committed an offense is present "is a 'practical, nontechnical conception' that weighs evidence 'not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *United States v. Newsome*, 504 F. App'x 463, 464 (6th Cir. 2012) (quoting *Gates*, 462 U.S. at 231-32). The determination of whether probable cause exists for an arrest relies upon "nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." *Gates*, 462 U.S. at 235-36.

First, for clarity, the Warren Codified Ordinances that Killingsworth was originally arrested for read, in pertinent part, as follows:

537.05 Aggravated Menacing

(a) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person . . ..

. . .

537.10 Telecommunication Harassment

. . .

(a) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit telecommunication to be made from a telecommunication device under the person's control, to another, if the caller does any of the following:

. . .

(6) Knowingly makes any comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten or harass the recipient;

. . .

Warren Codified Ordinance 537.05; Warren Codified Ordinance 537.10.[1]

Second, although Killingsworth argues that because the officers did not know whether Killingsworth himself made the Facebook posts at issue or directed another individual to post the Facebook posts at issue, probable cause for his arrest did not exist, this Court does not find this argument persuasive. At the time the warrant for Killingsworth's arrest was issued, the arresting officer knew that Facebook user "Edward Killingsworth" posted, on the Warren's Real Breaking News Facebook page, comments including: "I think a cop needs killed around here again"; "More cops need shot dead. They kill us, we kill them"; "Your kids need shot in front of you"; "F you and your kids, you won that prize"; "I'm going to F your wife first. Trust me I'll take one with me"; and "I'll see you in the woods." The arresting officer also knew that Facebook user "Edward Killingsworth"'s profile photograph from his personal Facebook page was, in fact, a photograph

---

[1] Although the Warren Municipal Court Docket for *State of Ohio v. Killingworth*, Warren M.C. No. 2019 CRB 002229 (Sept. 17, 2019) (dismissed Nov. 6. 2019)U.S.C. does not specify under which subsection of Warren Codified Ordinance 537.10 Killingsworth was charged, the government contends, in its Opposition to the Motion to Suppress, that Killingsworth was arrested and charged pursuant to Warren Codified Ordinance 537.10(a)(6). (Opp'n to Mot. to Suppress 4-5, ECF No. 18).

of Killingsworth, as compared to Killingsworth's driver's license photograph. The arresting officer also relied upon his training and experience that individuals often use their own Facebook profiles to post content on Facebook. This Court finds that these are reasonably trustworthy facts, as known by the arresting officer at the time of the issuance of the arrest warrant, which are sufficient for the officer to conclude that Killingsworth had committed an offense pursuant to the Warren Codified Ordinances enumerated above.

To require the arresting officer to know, with unquestionable certainty, that Killingsworth himself typed the words which appeared on Facebook goes beyond the requirements for probable cause. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating . . . often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar*, 338 U.S. at 176. This Court finds that the proper balance was struck between opposing parties in this matter – it was reasonable for the arresting officer to conclude, based upon his investigation, that Killingsworth himself created those Facebook posts, and, accordingly, had committed an offense. Therefore, probable cause supported the warrant issued for Killingsworth's arrest.

2. <u>Warrantless Search Incident to Lawful Arrest</u>

Killingsworth next argues that because his arrest was not supported by probable cause, the evidence obtained when he was searched immediately after his arrest should be suppressed. However, because this Court has determined that Killingsworth's arrest was supported by probable cause, and, therefore, proper under the Fourth Amendment, the "search incident to arrest" exception to the Fourth Amendment warrant requirement applies.

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order

to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.. . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control" – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Chimel v. California*, 395 U.S. 752, 762-63 (1969). In truth, a warrantless search incident to a lawful arrest "'while based upon the need to disarm and to discover evidence,' [is] reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found." *Riley v. California*, 573 U.S. 373, 386 (2014) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

In the instant matter, the warrantless search incident to his lawful arrest discovered a cell phone in Killingsworth's personal possession. The warrantless seizure of this cell phone is lawful as it was discovered during a lawful warrantless search conducted incident to a lawful arrest. *See Riley*, 573 U.S. at 401 (explaining that searching the information contained on a cell phone typically requires a search warrant, but the warrantless seizure of the cell phone itself is lawful if the cell phone is discovered in a search incident to a lawful arrest). Therefore, Killingsworth's request to suppress the evidence obtained from the search incident to his arrest is denied.

### C.  <u>The Fifth Amendment and Spontaneous Utterances</u>

The Fifth Amendment to the United States Constitution protects an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend V. This constitutional right "serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). This protection against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the

unfettered exercise of his own will.'" *Id.* at 460 (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). The Supreme Court of the United States made clear that, in protecting the right against self-incrimination

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Miranda*, 384 U.S. at 444. It is, therefore, required that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

However, "not . . . all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). *See also Miranda*, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence"). The lynchpin, therefore, is whether an interrogation occurred because "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation," and interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300.

When a defendant in custody makes spontaneous statements, not in response to an interrogation, these voluntary statements "are admissible even though no *Miranda* warning has been given." *United States v. Starks*, No. 95-4105, 1997 U.S. App. LEXIS 12016, at *7-8 (6th Cir. May 21, 1997). *See also United States v. Booker*, No. 92-5174, 1992 U.S. App. LEXIS 29028, at

*12-13 (6th Cir. Nov. 5, 1992) ("*Miranda* warning requirements do not apply to a spontaneous and voluntary utterance which is made under no compulsion to speak"); *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997) ("where a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statements are admissible despite the absence of *Miranda* warnings"). Finally, a defendant who "seeks suppression of his statements based upon a failure to receive his *Miranda* warnings . . . must demonstrate by a preponderance of the evidence . . . that he was entitled to receive them; *i.e.*, that he was subjected to a 'custodial interrogation.'" *United States v. Lawrence*, Nos. 88-2056, 88-2086, 88-2087, 88-2109, 22-2135, 1989 U.S. App. LEXIS 19087, at *15 (6th Cir. Dec. 18, 1989).

Given this legal framework, this Court finds that any statements Killingsworth made after his arrest were spontaneous, voluntary statements that were not made in response to interrogation and Killingsworth has not met his burden to prove that he was subjected to a custodial interrogation such that he was entitled to receive *Miranda* warnings. Both arresting officers were clear that they did not ask Killingsworth any questions, they did not recite the *Miranda* warnings to Killingsworth, and they heard Killingsworth make unsolicited statements, including questions to the officers which were briefly answered. None of this conduct rises to the level of an interrogation or its functional equivalent. The statements made and questions asked by Killingsworth, during the timeframe at issue, were unprompted, uncoerced, spontaneous, and voluntary. Therefore, although the *Miranda* warnings were not recited to Killingsworth, the utterances Killingsworth made during his arrest are admissible. Killingsworth's request to suppress these statements is, therefore, denied.

## III.   CONCLUSION

Therefore, for all the reasons enumerated throughout this memorandum, this Court finds that the indictment against Killingsworth is legally sufficient pursuant to the Federal Rules of Criminal Procedure and common law associated with charges under 18 U.S.C. § 875(c) specifically. Furthermore, the government has not violated Killingsworth's First Amendment rights in bringing this charge – it is solely a factual issue that a jury must address as to whether the statements Killingsworth made rise to the level of true threats as defined by law, or whether the statements are political hyperbole or mere opinions. Therefore, Killingsworth's request to dismiss his indictment is DENIED.

In addition, Killingsworth's Fourth Amendment rights were not violated as the warrant issued for his arrest was supported by probable cause, and the warrantless search that occurred incident to his arrest was not an unreasonable, unlawful search. Therefore, since no illegal searches or seizures occurred in violation of the Fourth Amendment, Killingsworth's request to suppress evidence obtained during his arrest is DENIED.

Finally, Killingsworth's Fifth Amendment rights were not violated as no custodial interrogation occurred at the time of his arrest warranting the officers to recite the *Miranda* warnings to Killingsworth. Because any statements Killingsworth made at the time of his arrest were spontaneous, voluntary utterances that were not in response to a custodial interrogation or its functional equivalent, Killingsworth's request to suppress these statements is DENIED.

IT IS SO ORDERED.
DATE: August 12, 2020                            /s/ John R. Adams_____
                                                 Judge John R. Adams
                                                 UNITED STATES DISTRICT COURT